Mr. James F. Heekin, Jr. Attorney, Southeast Volusia Hospital District and Bert Fish Medical Center, Inc. Post Office Box 2809 Orlando, Florida 32802-2809
Dear Mr. Heekin:
On behalf of the Southeast Volusia Hospital District and the Bert Fish Medical Center, Inc., you ask the following question:
Is the Bert Fish Medical Center, Inc., which operates a duly licensed acute care hospital as an instrumentality of its sole member, the Southeast Volusia Hospital District, a special independent tax district of the State of Florida, entitled to sovereign immunity under the provisions of section 768.28, Florida Statutes?
Section 768.28, Florida Statutes, in accordance with section 13, ArticleX of the Florida Constitution, waives sovereign immunity for the state and its agencies and subdivisions to the extent specified therein. Monetary limitations are prescribed in the statute allowing payment of a judgment against the state or its agencies and subdivisions.[1]
State agencies or subdivisions within the scope of section 768.28, Florida Statutes, include "executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities[.]"[2] Pursuant to section 768.28(9)(a), Florida Statutes, "[n]o officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."
The Florida Supreme Court has recognized that the immunity provided in section 768.28, Florida Statutes, extends to certain private parties who are involved in contractual relationships with the State, provided that such parties are acting as agents of the State.[3] Whether such contracted parties "are agents of the state turns on the degree of control retained or exercised by [a state agency]."[4]
As noted by the First District Court of Appeal in Shands TeachingHospital and Clinics, Inc. v. Lee,[5] "there are no sharp criteria" for determining when a corporation is primarily acting as an instrumentality of the state. However, the court considered a critical factor to be the existence of governmental control over the detailed physical performance and day-to-day operation of the corporation. The Shands court evaluated the legislation that organized the hospital, finding that the state was authorized to lease the facility to a private nonprofit corporation, which was directed to conduct a study and develop a plan to become more self-sufficient and fiscally independent. The court concluded that the Legislature's intent was to treat Shands, the corporation managing and operating the hospital, as an autonomous and self-sufficient entity, not primarily acting as an instrumentality on behalf of the state.
On the other hand, in Prison Rehabilitative Industries and DiversifiedEnterprises, Inc. v. Betterson,[6] the First District Court of Appeal, after a fact-intensive analysis of the authorizing legislation, held that Prison Rehabilitative Industries and Diversified Enterprises, Inc. (PRIDE) was an instrumentality of the state entitled to the benefits of sovereign immunity. The court found that the statutory scheme governing PRIDE contained numerous provisions for extensive governmental control over PRIDE's day-to-day operations sufficient for it to constitute an instrumentality of the state. For example, the court found: 1) the Department of Corrections leased the industry program to the not-for-profit corporation organized solely for the purpose of operating the program; 2) while PRIDE was accorded substantial independence in running the work programs, its essential operations nevertheless remained subject to a number of legislatively mandated constraints, including providing the Governor and Legislature annual independently audited financial statements and in-depth status reports; 3) PRIDE was subjected to both financial and performance audits by the auditor general; 4) PRIDE's Articles of Incorporation were subject to the Governor's approval; and 5) funds were provided by the state. These statutory constraints cumulatively constituted sufficient governmental control over PRIDE's daily operations to require the conclusion, as a matter of law, that PRIDE acted primarily as an instrumentality of the state.[7]
In Attorney General Opinion 02-71 this office concluded that Indian River Memorial Hospital, Inc., was not acting primarily as an instrumentality of the Indian River County Hospital District in its operation of Indian River Memorial Hospital such that it had sovereign immunity under section768.28, Florida Statutes. This office found that the corporation received no money from the district other than payments for the care provided to indigent county residents, and that the corporation provided no other governmental function. However, in an informal opinion to the general counsel for the Health Care District of Palm Beach County, this office concluded that Glades Hospital Holdings, Inc., a Florida not-for-profit corporation that was created to carry out the functions of the district and whose sole member was the district, was subject to the sovereign immunity provisions of section 768.28.[8]
In the instant inquiry, the Southeast Volusia Hospital District (District) was created by special act as an independent special district to establish, operate and maintain such hospitals, clinics, nursing homes or related facilities as its board of commissioners deems necessary for the health and welfare of the people of the district.[9] You state that in 1995 the District reorganized its operations under the provisions of section 155.40, Florida Statutes, and formed the Bert Fish Medical Center, Inc. (Corporation) as a not-for-profit corporation for the purpose of operating one or more hospitals and other health care facilities situated within the geographic boundaries of the District.[10]
Pursuant to Article IV of the Corporation's Articles of Incorporation, the District is the sole member of the Corporation. The management of the Corporation is vested in a board of directors consisting of not less than seven and not more than eleven members. The seven members of the District's board of commissioners comprise the seven members of the Corporation's board, while up to four additional members may be designated to serve on the board.[11] The bylaws of the Corporation currently provide for the Corporation's board of directors to be composed of seven members who are the District's board of commissioners.[12] In addition, the lease and transfer agreement, as amended, provides in part:
"[T]he obligations of Lessee [Corporation] under this Agreement . . . shall be considered a transfer of a governmental function from Lessor [the District] to Lessee. Further, consistent with Section 155.40(7),Florida Statutes, in carrying out its obligations under this Agreement, Lessee shall be construed to be "acting on behalf of" Lessor as that term is used in section 155.40, Florida Statutes, as amended."[13]
The lease also requires the Corporation to provide the District with various financial reports.[14] You have supplied this office with a copy of a letter from the Internal Revenue Service recognizing the Corporation as an affiliate of government, as well as a circuit court decision holding that the Corporation was entitled to sovereign immunity.[15]
In light of the above, I am of the opinion that the Southeast Volusia Hospital District exercises significant control over the Bert Fish Medical Center, Inc., and thus the not-for-profit corporation would appear to be subject to the sovereign immunity provisions of section 768.28, Florida Statutes.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] Section 768.28(5), Fla. Stat., limits a judgment by any one person to $100,000 and limits any claim or judgment that, when totaled with all other claims paid by the state arising out of the same incident or occurrence, to $200,000.
[2] Section 768.28(2), Fla. Stat. See Eldred v. North Broward HospitalDistrict, 498 So.2d 911, 912 (Fla. 1986) (special taxing district hospital being charged with the responsibility to provide for the public health and good of the citizens within the district, was an "independent establishment of the state" for purposes of s. 768.28).
[3] See, e.g., Stoll v. Noel, 694 So.2d 701 (Fla. 1997).
[4] Id. at 703. And see Agner v. APAC-Florida, Inc., 821 So.2d 336
(Fla. 1st DCA 2002), holding that s. 768.28(9)(a), Fla. Stat., provided immunity to the corporation provided the contract established that the state agency would exercise significant control over the corporation;Sierra v. Associated Marine Institutes, Inc., 850 So. 2nd 582 (Fla. 2d DCA 2003), stating that although the corporations hired by Department of Juvenile Justice to run the boot camps were not state agencies, they may have sovereign immunity under s. 768.28 as agents of the state.
[5] 478 So.2d 77, 79 (Fla. 1st DCA 1985).
[6] 648 So.2d 778 (Fla. 1st DCA 1994).
[7] See Op. Att'y Gen. Fla. 99-05 (1999) in which this office determined that a nongovernmental community transportation coordinator could claim sovereign immunity under section 768.28, Florida Statutes, based upon the oversight of the Commission for the Transportation Disadvantaged and the local coordinating board over the actions of the coordinator in carrying out the legislative mandate to provide transportation services. Compare Op. Att'y Gen. Fla. 02-71 (2002) where this office concluded that the Indian River Memorial Hospital, Inc., which was not formed by the district or any other governmental agency, received no money from the corporation other than payments for the care provided to indigent county residents, and provided no other governmental function, was not acting primarily as an instrumentality of the hospital district for purposes of s. 768.28, Fla. Stat.
[8] Informal Op. to Helene Cohen Rosen, General Counsel, Health Care District of Palm Beach County, dated May 3, 2004.
[9] See s. 3(5), Ch. 03-310, Laws of Fla., codifying, amending and reenacting the special acts relating to the Southeast Volusia Hospital District, an independent special tax district. The district is also authorized to provide the necessary hospitals, clinics, nursing homes and related services or facilities for the poor and indigent persons or, in lieu thereof, to enter into contracts for a period not exceeding twenty-five years with any such facility.
[10] See Art. II, s. 1, Articles of Incorporation of Bert Fish Medical Center, Inc., dated March 10, 1995, setting forth the purpose of the Center. And see s. 155.40, Fla. Stat., which authorizes any county, district, or municipal hospital organized and existing under the laws of this state to sell or lease such hospital to a for-profit or not-for-profit Florida corporation, and enter into leases or other contracts with a for-profit or not-for-profit Florida corporation for the purpose of operating and managing such hospital and any or all of its facilities of whatsoever kind and nature.
[11] See Art. V, Articles of Incorporation of Bert Fish Medical Center, Inc., supra.
[12] See Art. IV, s. 2, Bylaws, Bert Fish Medical Center, Inc.
[13] Section 2.7, Lease and Transfer Agreement between Southeast Volusia Hospital District and Bert Fish Medical Center, Inc., as amended, November 4, 2003. The amendment states that the original agreement regarding the transfer of a governmental function is being modified to be "consistent with the provisions of Section 155.40(6)(a),Florida Statutes, as amended, and to evidence the parties' intent that Lessee act on behalf of Lessor." Section 2.7 of the amended lease further provides that "Lessor and Lessee hereby further acknowledge that, because the Board of Directors of Lessee is comprised of the Board of Commissioners of Lessor as appointed from time to time by the Governor of the State of Florida, Lessor has substantial control over the day to day operations of Lessee." And see s. 155.40(6)(a) and (7), Fla. Stat., respectively providing that unless otherwise expressly stated in the lease documents, the transaction involving the sale or lease of a hospital shall not be construed as a transfer of a governmental function from the county, district, or municipality to the private purchaser or lessee or that the lessee is "acting on behalf of" the lessor as that term is used in statute.
[14] See s. 5.19 of the Lease and Transfer Agreement requiring a yearly fiscal report and monthly financial statements and monthly utilization statistics provided on a quarterly basis; quarterly indigent care reports; annual capital expenditure reports; detailed annual capital budget and annual operating budget and annual "State of the Hospital" report.
[15] See respectively Letter from Edward K. Karcher, Chief, Exempt Organizations, Internal Revenue Service, Department of the Treasury, to Bert Fish Medical Center, Inc., dated November 18, 1997; and Sierra v.Bert Fish Medical Center, Inc., Case No. 1999-31850 CICI (31) (Fla. 7th Jud. Cir. Volusia Co., Sept. 26, 2002).